IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TROY BUCCINI and MICHAEL STARY, Plaintiffs; | ) ) ) ) | |
| v. | ) ) | Case No. JURY TRIAL DEMANDED |
| THE CITY OF AURORA, ILLINOIS, a municipal corporation; AURORA POLICE OFFICERS MICHAEL CARRASCO, REYNALDO RIVERA; and SGT. JAMES BOATMAN, all in their individual and official capacities; and Defendants. | ) ) ) ) ) ) ) ) ) | |

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, INJUNCTIVE RELIEF,
DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND DAMAGES

Plaintiff, by his undersigned counsel, complains against Defendants as follows:

1.     This is a civil rights action involving federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. §1983, challenging the actions of Defendant City of Aurora, Illinois (hereafter, "Aurora") and its agents, Officers Carrasco, Rivera, and Sgt. Boatman, with respect to Plaintiffs' expressive activities on the public easement which passes in front of the Planned Parenthood abortion facility in Aurora. Plaintiffs seek a declaration that the Defendant Officers actions in seizing and arresting them while they peacefully sidewalk counseled prospective abortion patients on the public easement violated the First and Fourth and Fourteenth Amendments to the United States Constitution, as well as breaching a settlement

agreement made on behalf of said anti-Planned Parenthood sidewalk counselors back in 2010, and Plaintiffs seek a permanent and preliminary injunction prohibiting Aurora and its police from doing such acts again.

2. In addition to declaratory and injunctive relief, Plaintiffs seek damages for the past violations of their First, Fourth, and Fourteenth Amendment rights.

3. Plaintiff Troy Buccini is a resident of Elwood, Illinois (Will County). Plaintiff Michael Stary is a resident of Downers Grove, Illinois (DuPage County).

4. Defendant City of Aurora is an Illinois municipality which sits in DuPage, Will, Kane, and Kendall Counties. The Defendant police officials were employed by and agents of the City of Aurora at the time of the events at issue in this case.

5. Jurisdiction and Venue are proper in this district pursuant to 28 U.S.C. § 1391(b) because the Parties all are situated and reside in this district and all of the acts described in this Complaint occurred in this district.

6. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

7. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. § 1367.

8. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; and costs and attorney's fees under 42 U.S.C. §1988.

9. On September 26, 2015, Plaintiffs went to the public easement in front of Planned Parenthood intending to sidewalk counsel prospective abortion patients, hand out Christian pro-life literature, and engage in conversation with willing persons entering the abortion clinic about the scientific, physical, and emotional

dangers and evil of abortion, as well as the Biblical basis for such moral beliefs against abortion.

10.     Soon after Plaintiffs began this, the Defendant Officers Carrasco, Rivera, and Sgt. Boatman arrested the Plaintiffs for trespass, claiming they had no right to be on the public easement, and they were transported to jail.

11.     Such arrest was in violation of the Settlement Agreement (SA) made between representative pro-life organizations and the City of Aurora in 2010, in a case litigated before this Court, namely Case No. 2001-CV-4803, *FOX VALLEY FAIVIILIES AGAINST PLANNED PARENTHOOD, an unincorporated association, PRO-LIFE ACTION LEAGUE, INC., an Illinois not-for-profit corporation, and ERIC SCHEIDLER, vs. CITY OF AURORA, a municipal corporation,* said SA stating in pertinent part:

(page 5) "[b]efore a party brings any action to the Court, the grievant shall provide the other party with a written statement of the grievance and allow seven (7) calendar days for resolution of the problem, unless there is an emergency requiring immediate court relief. No court action shall be commenced until after the seven (7) day period has concluded. If, following the initiation of court action and before the Court enters a ruling, the grievance is resolved between the parties, the grievant shall withdraw the court action with each side assuming its own costs."

9.     Section V of the SA states as follows:

"The following procedures shall be followed on the occasions in which viable complaints of local ordinance violations are raised against anti-Planned Protesters, anti-abortion counselors or prayer vigil participants:
A. If the individual against whom a complaint is raised has no serious criminal history, then the complaint will be treated as a local ordinance violation.
B. A complaint shall be subject to the grievance procedures set forth in Section III of this Agreement and no citation will be issued pending the outcome of the grievance process.
C. The liaisons and party representatives shall convene a meeting within seven days of the alleged ordinance violation in order to attempt to resolve the matters that resulted in the issuance of a complaint."

And on page 12 of the SA:

"The City agrees that it will not arrest anti-Planned Parenthood protesters or anti-abortion counselors or prayer vigil participants for trespassing on the Planned Parenthood side of the access road—an area running from the west side of Oakhurst Drive to the northwest corner of the property owned by Planned Parenthood—absent direction from proper authority (over the private property of the common areas)."

The SA is attached to this Complaint as Exhibit 1.

10.     Plaintiffs were relentlessly prosecuted over the course of five (5) years by the City of Aurora, which refused to settle or dismiss the case even when confronted with the SA during the course of said proceedings.

11.     The City and the Defendant Officers violated the agreement when the Defendant Officers arrested Buccini and Stary for allegedly trespassing in violation of Aurora Ordinance 29-93 while engaged in protesting at the Planned Parenthood facility, rather than engaging in the grievance procedures outlined in Sections III and V of the SA.

12.     The City and the Defendant Officers violated the agreement when the Defendant Officers prosecuted Buccini and Stary in court over the course of four years, and then appealing when the charges were dismissed by the trial court, for allegedly trespassing in violation of Aurora Ordinance 29-93 while engaged in protesting at the Planned Parenthood facility, rather than engaging in the grievance procedures outlined in Sections III and V of the SA.

13.     Next, the City violated the SA when it would not allow Buccini and Stary to protest and sidewalk counsel on the access road (public easement) which passes in front of Planned Parenthood to get from the public street to the shopping complex.

14.     Page 12 of the Agreement states: "The City agrees that it will not arrest anti-Planned Parenthood protesters or anti-abortion counselors or prayer vigil participants for trespassing on the Planned Parenthood side of the access road—an area running from the west side of Oakhurst Drive to the northwest corner of the property owned by Planned Parenthood—absent direction from proper authority (over the private property of the common areas)."

15.     As the video links of the incidents giving rise to the arrest shows (links below), both Buccini and Stary are and were "anti-Planned Parenthood protesters or anti-abortion counselors or prayer vigil participants" and were "on the Planned Parenthood side of the access road," and thus covered by the SA. In arresting them in this matter for being on the Planned Parenthood side of the access road, the City has violated the agreement.

16.     And as the citation states, the complainant was the arresting officer, Rivera, and not any representative of Planned Parenthood or the other owner of the access road, so Officers Rivera and Carrasco had no "direction from proper authority (over the private property of the common areas" to arrest Buccini and Stary for trespass when they were on the Planned Parenthood side of the access road. At no time did any "owner or occupant" of Planned Parenthood notify Defendants that they were unlawfully on their private property. Only the arresting officer made this claim, as video evidence taken at the time in question shows.

## FIRST CAUSE OF ACTION
### Violation of the rights of Freedom of Religion, Speech and of the Press Under the First Amendment to the U.S. Constitution: All Defendants

17.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1-16 above.

18.     The public ways and sidewalks where Plaintiffs were, and from which they were told to leave, being a public easement, constitute a traditional public forum.

19.     Plaintiffs' pro-life political and religious speech lies at the core of the First Amendment.

20.     Defendants' directives against Plaintiffs' religious speech on the public sidewalk, and disparaging of the same based on its content, and retaliation against Plaintiffs for asserting their rights, violates the First Amendment on its face and as applied because it prohibits speech and expressive activities of Plaintiff and third parties not before the Court in the allegedly restricted areas, which are traditional public fora.

20.     Insofar as the Defendants are trying to restrict all speech on public easements, such a directive is overbroad on its face and as applied because it prohibits speech on all public easements, even those that have had no expressive activities or difficulties of any kind in the past or that are unrelated to abortion.

21.     The Defendants' directive is overbroad on its face and as applied because it prohibits most First Amendment protected leafleting and sidewalk counseling, which is directed towards recipients who have not refused consent.

22.     Because the aforementioned directive is an unconstitutionally overbroad restriction on expressive activity, it restricts more speech than necessary to achieve any governmental interest.

23.     The directive is an unconstitutional content-based restriction on speech because it targets certain categories of speech; that is, passing a leaflet or handbill, displaying a sign, or engaging in oral protest, education, or counseling against abortion.

24.     The directive is an unconstitutional content- and viewpoint-based restriction, because it was applied so as to restrict pro-life speech.

25.     The directive discriminates on its face and as applied against Plaintiffs and others by prohibiting them from engaging in speech and other expressive activities in traditional public fora based solely upon the pro-life content and viewpoint of their speech.

26.     The directive is an unconstitutional content- and viewpoint-based restriction on expression because it requires government officials, pursuant to unbridled discretion, to determine what speech and speakers within Aurora are restricted on public sidewalks.

27.     The directive is an unconstitutional content-based restriction on expression because it unlawfully discriminates based on the content of the message conveyed. Public expression concerning labor relations free of government regulation under the Illinois Labor Dispute Act, 820 ILCS 5/1 – 1.5, and therefore speech related to labor relations is exempted, while speech related to abortion is severely restricted.

28.     No compelling, substantial, or even legitimate governmental interest exists to justify the directive's restrictions on speech in traditional public fora.

29.     The directive is not the least restrictive means to accomplish any permissible purpose sought to be served by Aurora, and it restricts substantially more speech than necessary.

30.     The directive is not narrowly tailored to serve any asserted interest of Aurora.

31.     Plaintiffs' effective communication of their message requires a personal approach to persons on the public ways, in this case a public easement, and the directive completely forecloses this method of communication.

32.     Plaintiffs have no adequate remedy at law for the violation of their federal constitutional rights.

WHEREFORE, Plaintiffs respectfully request the Court to grant the relief set forth hereinafter in the prayer for relief.

## SECOND CAUSE OF ACTION
### Violation of Due Process under the Fourteenth Amendment to the U.S. Constitution: All Defendants

33.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1- 32 above.

34.     The Defendants' directive against Plaintiff's presence and speech on the public sidewalk is an unconstitutionally vague restriction on speech on its face and as applied because it fails to adequately advise, notify, or inform persons subject to prosecution under its terms of its requirements, including the requirement as to what activities constitute an unlawful approach to persons (many of whom are willing to be approached) and what is a public easement.

35.    The directive is an unconstitutionally vague restriction on speech on its face and as applied because it fails to provide fair notice and warning to individuals as to when and under what circumstances the consent requirement applies and is satisfied.

36.    The directive is unconstitutionally vague because it lacks any standards or criteria to guide those charged with enforcing it and thus gives government officials unbridled discretion to determine which speech activities are, and which are not, permissible.

37.    The directive is an irrational and unreasonable policy, which imposes irrational and unreasonable restrictions on the exercise of Plaintiff's constitutional rights.

35.    Aurora does not have a compelling, or even rational, reason to prevent Plaintiff from engaging in his constitutionally protected speech and expressive activities.

36.    The directive violates Plaintiff's due process rights on its face and as applied in violation of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

### THIRD CAUSE OF ACTION
### Violation of the Fourth Amendment to the U.S. Constitution: False Arrest, Unlawful Detention, Malicious Prosecution: All Defendants

37.    Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1- 36 above.

38.    Defendants illegally seized the Plaintiffs and detained them in jail, and without probable cause or reasonable suspicion to believe they were committing a crime, in light of the Settlement Agreement and the First Amendment as it pertains to public easements.

39.     The Defendant Officers at all times relevant hereto, were employed as police officers by the City of Aurora, and were on duty and acting within the course and scope of their employment as a police officers.

40.     Defendants, under color of state law, maliciously and in bad faith caused Plaintiffs to be prosecuted for criminal trespass (Circuit Court of Kane County Case Nos. 2015-OV-002276 and 2016-OV-2217, in violation of their Fourth and Fourteenth Amendment rights.

41.     The proceedings terminated in Plaintiffs' favor, the charges having been dismissed on a direct finding after full trial on the merits, and upon Plaintiff's Motion to Reconsider, and the Illinois Appellate Court, Second District upheld the dismissal in Case Nos. 2-20-0072 and 2-20-0073, on September 24, 2020.

42.     Defendants' actions violate Plaintiff's Fourth Amendment rights facially and as applied.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## FOURTH CAUSE OF ACTION
### Battery

43.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1-42 above.

44.     Defendants commenced and continued judicial proceedings against the Plaintiffs.

45.     The proceedings terminated in Plaintiffs' favor, the charges having been dismissed on a direct finding after full trial on the merits, and upon Plaintiff's Motion

to Reconsider, and the Illinois Appellate Court, Second District upheld the dismissal in Case Nos. 2-20-0072 and 2-20-0073, on September 24, 2020.

46.     Defendants lacked probable cause to maintain the proceedings, in light of the SA and the First Amendment as it pertains to public easements.

47.     The Defendants acted with malice in commencing and maintaining the proceedings against Plaintiffs, as evidenced by their willful disregard of the SA and relentless pursuit of said proceedings against Plaintiffs over the course of five (5) years.

48.     Said malicious prosecution caused damages to Plaintiffs including attorneys' fees and multiple trips to court, and a chill on their exercise of First Amendment rights.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

### FIFTH CAUSE OF ACTION
### Breach of Settlement Agreement: All Defendants

49.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1-48 above.

50.     The SA is a valid and enforceable contract between Defendants and representative Plaintiffs in this Court's Case No. 2007-CV-4803, resolving the case and causing each or the parties to release their claims pending at the time of settlement.

51.     Plaintiffs in the instant case are intended third-party beneficiaries of the SA, as evidenced by the following section on page 12:

"The City agrees that it will not arrest anti-Planned Parenthood protesters or anti-abortion counselors or prayer vigil participants for trespassing on the Planned Parenthood side of the access road—an area running from the west side of Oakhurst Drive to the northwest corner of the property owned by Planned Parenthood—absent direction from proper authority (over the private property of the common areas)."

52.    Defendants breached the above section of the SA by arresting Plaintiffs, who are "anti-Planned Parenthood protesters... anti-abortion counselors...[and] prayer vigil participants" who were lawfully on the public easement in question when they were arrested for criminal trespass.

53.    The Agreement further states on pages 13—14 that before any citations can be issued with respect to anti—Planned Parenthood protesters on the Planned Parenthood side of the access road, the grievance process (discussed above) must first be exhausted. Again, this was not done, which constitutes a breach of the SA on the part of Defendants.

54.    Plaintiffs performed their obligations under the contract by seeking, unsuccessfully, to follow the grievance procedure; Defendants declined to submit to said grievance procedure and continued to prosecute Defendants even after being confronted with the SA by Plaintiffs, even up to and including appealing the trial court's dismissal of the criminal trespass charges against Defendants.

55.    Said breach of the SA caused damages to Plaintiffs including attorneys' fees and multiple trips to court and a chill on their exercise of First Amendment rights.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## SIXTH CAUSE OF ACTION
### Local Government Immunity: City of Aurora

56.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1- 55 above.

57.     The acts of the Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of employment.

58.     Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant City of Aurora is liable for any judgments in this case arising from the individual Defendants' actions.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## SEVENTH CAUSE OF ACTION
### Unconstitutional Policy and Custom: City of Aurora

59.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1- 56 above.

60.     The acts of the Defendant-Officers described in the above claims were committed under color of law and pursuant to a policy and custom of violating the First, Fourth, and Fourteenth Amendment rights of Plaintiffs, as evidenced by patterns of said violations, to wit, arrests of other "anti-Planned Parenthood protesters... anti-abortion counselors...[and] prayer vigil participants" who were lawfully on the public easement in question when they were arrested for criminal

trespass, and threatening others into giving up their First Amendment rights to protest, pray, or sidewalk counsel on the public easement.

61.     In addition, the acts of the Defendant-Officers described in the above claims were committed under color of law and pursuant to a policy and custom of violating the First, Fourth, and Fourteenth Amendment rights of Plaintiffs, as evidenced by policy makers of the City of Aurora declining to engage in the grievance process outlined in the SA, and declining to settle the criminal cases and dismiss the criminal trespass charges against Plaintiffs, and persisting in prosecuting plaintiffs even to the point of appealing the dismissal of the criminal cases.

## CONCLUSION

WHEREFORE, Plaintiff demands judgment against all Defendants as well as compensatory, nominal, and exemplary damages and attorney's fees pursuant to 42 U.S.C. §1988 and any and all other applicable statutory provisions, and for any and all other relief this Court deems just.

PLAINTIFFS DEMAND TRIAL BY JURY.


Respectfully submitted,
s/Jason R. Craddock
Jason R. Craddock
Attorney at Law
2021 Midwest Rd., Ste. 200
Oak Brook, IL 60523
Phone: 708-946-4973
Email: craddocklaw@icloud.com
or cradlaw1970@gmail.com

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **FOX VALLEY FAMILIES AGAINST** ) | |
| **PLANNED PARENTHOOD, an** ) | |
| **Unincorporated association,** ) | |
| **PRO-LIFE ACTION LEAGUE, INC., an** ) | |
| **Illinois not for profit corporation,** ) | |
| **and ERIC SCHEIDLER,** ) | **Case No. 07 C 4803** |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Judge Kendall** |
| **v.** ) | |
| ) | |
| **THE CITY OF AURORA,** ) | |
| **ILLINOIS, a Municipal corporation,** ) | |
| ) | |
| **Defendants.** ) | |

## SETTLEMENT AGREEMENT

Plaintiffs, FOX VALLEY FAMILIES AGAINST PLANNED PARENTHOOD, the PRO-LIFE ACTION LEAGUE, INC. and ERIC SCHEIDLER, by and through their attorneys, Thomas Brejcha and Peter Breen of the THOMAS MORE SOCIETY, a public interest law firm, and Jason R. Craddock, Attorney at Law (collectively the "Plaintiffs"), and Defendant, the CITY OF AURORA (the "City" or "Aurora"), by and through its attorneys, KLEIN, THORPE AND JENKINS, LTD., enter into the following Settlement Agreement, and state as follows:

## RECITALS

A.      **WHEREAS,** the parties mutually recognize the fundamental interests that motivate their actions in this matter: to wit, Plaintiffs' interest in protecting and exercising their First Amendment rights to free speech and assembly and in assuring that women and girls facing a choice whether or not to abort their pregnancy have information

1

about and access to real alternatives to abortion, and the City's obligations and responsibilities to all its citizens to promote public safety and order and to protect property rights, along with the use and quiet enjoyment of those rights, and to protect the citizens' right to exercise their First Amendment rights as well as their right to choose whether or not to have abortions;

**B.    WHEREAS,** the parties mutually recognize that the legal right to choose whether or not to abort a pregnancy touches deeply held religious, moral, personal and political convictions, the advocacy and exercise of which is protected against undue burdens under the United States Constitution, and that the right to free speech, free assembly and free exercise of religion are also protected under the United States Constitution;

**C.    WHEREAS,** the parties mutually recognize that Aurora is a large and growing municipality with a widely diverse population and that the City's governing ordinances and policies must be applied and enforced to address the wide range of interests and needs that characterize Aurora's citizens without bias or discrimination as to race, creed, color, religion or social, moral or political viewpoint;

**D.    WHEREAS,** the parties mutually recognize and commit to the proposition that principles of civility and respect for the well-being of the community should guide the relations between the parties;

**E.    WHEREAS,** the parties mutually seek to avoid the expense, risk, uncertainty, stress and delay that litigation of this matter to trial and judgment would entail;

**THEREFORE,** the parties agree to settle and fully and completely resolve the disputes between them in this lawsuit – while specifically excluding disputes related to *Frachey, et al., v. Planned Parenthood of Illinois, et al.*, DuPage Co. Circuit Court, Nos. 2008 MR 261 & 2008 MR 1624, in which Fox Valley Families Against Planned Parenthood and the City are opposing parties – by entering into a Settlement Agreement (the "Agreement"), the terms, conditions and provisions of which are set forth as follows:

## I.      AMENDMENT OF CITY ORDINANCES

The City recognizes that its governing ordinances as written and as applied should not violate the fundamental rights of its citizens to freedom of expression and assembly. In order to ensure the protection of these fundamental rights to all Aurora citizens, the City agrees to amend City of Aurora Code §27-7 and § 29-24.  As part of the amendment process, the City will provide Plaintiffs and/or a representative or agent the opportunity to review and comment on drafts of the revised ordinances prior to enactment of the amended provisions by the Aurora City Council.  The fact that the City will amend § 27-7 and § 29-24 does not and shall not be construed as an admission by the City that these ordinances in their present, non-amended form are unconstitutional as written or as implemented.  Enforcement of these ordinances will be suspended pending enactment of amended ordinances.  Plaintiffs reserve the right to challenge any new ordinances if agreement cannot be reached as to their scope and content.  Meanwhile, signs banning any "picketing or protesting" in front of residences shall be removed forthwith.

## II.      TRAINING

The City recognizes that one way to promote both understanding and protection of the First Amendment freedom of speech and freedom of assembly rights of all its

citizens, including citizens involved in demonstration activities concerning the Planned Parenthood facility at 3051 East New York Street in Aurora, is to provide training to its employees, particularly Aurora Police Department officers, whose duties bring them into contact with citizens on a regular basis. In order to provide ongoing training pertaining to citizens' rights to freedom of speech and assembly and non-discriminatory law enforcement with respect to political viewpoints, the City shall take the following steps:

A. Make training on issues regarding First Amendment rights and non-discriminatory law enforcement with respect to political viewpoints a standard part of the annual training required of each full-time sworn officer in the Aurora Police Department;

B. Ensure that training on First Amendment rights and non-discriminatory law enforcement with respect to political viewpoints is provided by a member of the Aurora Police Department or by an individual selected by the City who is fully qualified to instruct police officers in the protection of citizens' First Amendment rights;

C. Invite Plaintiffs to make suggestions for experts in the area of law enforcement and First Amendment rights with whom the City may consult regarding the content of the training; and

D. Plaintiffs may review and challenge the legal content of the training materials that will be used for the training on First Amendment rights provided to Aurora Police Department officers.

## III. **GRIEVANCE PROCEDURES**

The parties believe that one way to promote civility and mutual respect for their interests is through the establishment of a protocol that will be used to air grievances when they arise. This grievance protocol will provide a mechanism for collecting accurate information when an allegation arises that the actions of a representative of either party threaten mutually recognized interests. Additionally, the protocol will allow for the prompt and direct communication between representatives of the parties so that misunderstanding can be minimized and effective remedial measures will be

implemented that respond to alleged grievances. The protocol shall consist of the following:

**A.** **Liaisons**

Plaintiffs and Defendant each shall designate a representative to whom concerns about violations of the Agreement will be communicated, with a copy sent to legal counsel. Upon receiving a report of an Agreement violation, the liaison shall have three (3) business days to investigate the allegations and report to the party raising the allegation the results of the inquiry, which may be extended, if necessary, by mutual consent.

**B.** **Status Meetings**

Representatives of the parties shall meet within fourteen (14) days following the execution of this Agreement and thereafter on a quarterly basis to assess the status of compliance with the terms of the Agreement**,** and on other occasions as needed. Participants in the status meetings shall include a senior officer of the Aurora Police Department, a senior representative of the Aurora city government, a leadership representative of the Fox Valley Families Against Planned Parenthood, and the two designated party liaisons. Status meetings provide a non-exclusive means for the parties to discuss reported violations of the Agreement, to give notice of upcoming events (e.g., a large rally Plaintiffs plan to stage at the site of the Planned Parenthood facility), and to maintain a means of communication between the parties to the Agreement.

**C.** **Dispute Resolution and Court Involvement**

The parties believe that Court involvement should be necessary only in the resolution of extreme and intractable problems. Before a party brings any action to the Court, the grievant shall provide the other party with a written statement of the grievance and allow seven (7) calendar days for resolution of the problem, unless there is an emergency requiring immediate court relief. No court action shall be commenced until after the seven (7) day period has concluded. If, following the initiation of court action and before the Court enters a ruling, the grievance is resolved between the parties, the grievant shall withdraw the court action with each side assuming its own costs.

**D.** **Confidentiality**

The parties agree that with regard to discussions that occur between them pursuant to this Settlement Agreement, that if the parties mutually agree that particular discussions should be confidential, these designated

discussions shall be confidential. Absent mutual agreement that confidentiality will pertain, discussions between the parties shall be non-confidential and public.

## IV. DEMONSTRATION AND COUNSELING ACTIVITY AT AND IN THE VICINITY OF 3051 EAST NEW YORK STREET

The Planned Parenthood facility is located at 3051 East New York Street. Three public thoroughfares – East New York Street, Eola Street and Oakhurst Drive – are in the immediate vicinity of the Planned Parenthood facility. East New York Street is one block north of the Planned Parenthood facility and runs east to west. Eola Street is approximately ½ mile west of the Planned Parenthood facility and runs north to south. Oakhurst Drive runs north to south and is adjacent to the east side of the property on which the Planned Parenthood facility is located. Eola Street and Oakhurst Drive form the east and west boundaries and East New York Street is the northern boundary for a shopping center with a number of commercial establishments, including a Dominick's grocery store and a Blockbuster video rental store.

The parties recognize Plaintiffs' rights to express and advocate their views regarding the presence of the Planned Parenthood facility at 3051 East New York Street in Aurora and to offer advice and counsel to persons who may enter or exit that facility for any reason. The parties also recognize the City's obligation to all Aurora citizens to maintain public safety and order and to protect property rights and the use and quiet enjoyment of those rights. Plaintiffs have indicated that three types of demonstration activities concerning the Planned Parenthood facility will be staged: daily protest, prayer, and/or counseling activities ("daily vigils"); monthly events; and larger advertised rallies that will occur approximately four times a year ("advertised events"). Public sidewalks, parkways and/or bike paths are adjacent to East New York Street, Eola Street and

Oakhurst Drive. The parties agree that all demonstration activity that occurs in the area shall take place on the public sidewalks, parkways and bike paths. No demonstration activity shall take place on any privately owned property, residential or commercial, in the area unless property owners consent thereto. The City will observe the plaintiffs' constitutional rights to use public sidewalks and rights of way equally as for any other citizens.

In order to balance Plaintiffs' First Amendment rights and the City's duties and responsibilities to its citizens, the parties agree that the following set of principles shall apply to the demonstration, prayer and sidewalk counseling activities at and in the vicinity of 3051 East New York Street:

**A.     Demonstration, Prayer and Sidewalk Counseling Activity Occurring On A Daily Basis**

The parties recognize that certain forms of demonstration activity will take place in the area on a daily basis. The parties agree that the following guidelines shall apply to these daily vigil activities:

1.      The City recognizes that plaintiffs will engage in demonstration, prayer and sidewalk counseling activities that include, but are not restricted to, sidewalk counseling, prayer, handbilling to persons (in or outside of vehicle) to the extent that such handbilling activities do not impede traffic and cause a risk to public safety, and individual protesters carrying signs. Therefore, notice to the City of these daily vigil activities is not necessary. Plaintiffs expect 4 to 10 individuals to engage in daily vigil demonstrations at any time. If Plaintiffs know or reasonably expect in advance that a daily vigil demonstration will involve more than 10 individuals, Plaintiffs will notify the Aurora Police Department.

2.      The parties agree that the daily vigil activities will take place on the sidewalk and parkway that run from the corner of East New York Street and the west side of Oakhurst Drive to the southeast corner of the Planned Parenthood property, subject to Article VI provisions, and also on private property to the extent that owners

7

or patrons consent thereto (pursuant to *People v. Carroll*, 322 Ill.App.3d 221 (2d Dist. 2001)).

3. Plaintiffs will be allowed to carry signs during their daily vigils. Signs may not be left in the parkway or on the sidewalk for more than two (2) hours without any sidewalk counselors, protesters or prayer vigil participants being present after which they will be considered "abandoned" and subject to confiscation and disposal by City of Aurora personnel. The parties agree that for all stationary signs having a display space of 432 square inches or more there shall be no more than one such sign per ten lineal feet of parkway. For stationary signs with less than 432 square inches of display space, Plaintiffs will limit themselves to a reasonable number of such stationary signs in the parkway.

4. No daily vigil activities will take place on the sidewalk or parkway on the east side of Oakhurst Drive from the intersection of East New York Street and Oakhurst Drive.

**B.** **Monthly Demonstration Activities**

Plaintiffs intend to stage monthly rallies in the area near the Planned Parenthood facility. Plaintiffs estimate that, typically, 100 to 250 protesters participate in the monthly protest events. The parties agree that the following guidelines shall pertain to the staging of the monthly demonstration activities:

1. Plaintiffs shall provide the City and the Aurora Police Department with the planned dates for the monthly protest events.

2. Plaintiffs and the City agree that the monthly protest activities shall be staged on the sidewalk on both sides of East New York Street and on the sidewalk and parkway on the west side of Oakhurst Drive running from the intersection of East New York Street and Oakhurst Drive to the southeast corner of the property on which the Planned Parenthood facility is located. But plaintiffs reserve the right to vary their protest activities and to conduct them on any public property in the City of Aurora, subject to Article VI provisions.

3. Protesters will be allowed to carry signs while engaged in demonstration activities on both sides of East New York Street. Stationary signs will be permitted in the parkway on the west side of Oakhurst Drive in an area running from the intersection of East

8

New York Street and Oakhurst Drive to the southeast corner of the Planned Parenthood property and on New York Street and on Eola Road on either side of the street. The parties understand that these signs may be displayed for the duration of the scheduled monthly demonstration event. The parties agree that for all stationary signs having a display space of 432 square inches or more there shall be no more than one such sign per ten lineal feet of parkway. For stationary signs with less than 432 square inches of display space, Plaintiffs will limit themselves to a reasonable number of such stationary signs in the parkway. Any signs placed in the parkway area running along the west side of Oakhurst Drive that remain on display two (2) hours after all sidewalk counseling, prayer vigil and protest participants have left the scene may be confiscated by City of Aurora personnel.

4.  If monthly protest activities include a presentation of "graphic signs" in the East New York Street demonstration area, Fox Valley Families Against Planned Parenthood representatives will display large and appropriate warning signs so that parents may either avoid the area or prepare their children for viewing the signs.

    Fox Valley Families Against Planned Parenthood agree to post warning signs related to "graphic signs" and have done so in the past. If Fox Valley Families Against Planned Parenthood reasonably cannot post warning signs, there will not be a breach of the Agreement and the City of Aurora may post warning signs.

5.  In the event that issues are raised concerning violations of the City's noise abatement code provisions, the following procedures shall be followed:

    a.  liaisions representing the parties shall be contacted and informed of the allegations of a violation of one or more City noise abatement provisions;

    b.  liaisons representing the parties shall come to the demonstration site as promptly as reasonably possible;

    c.  the parties, through their liaisons, shall seek to reach resolution of the issues that resulted in allegations of a violation of the City's noise abatement provisions;

    d.  if no agreement can be reached as a result of liaison efforts, the matter will be subject of a complaint adjudicated in court, where plaintiffs may also challenge the legality of said noise restrictions, but no ticket or citation will be issued to the

alleged noise abatement ordinance(s) offender at the demonstration site.

e. The City acknowledges that plaintiffs may call out to persons entering Planned Parenthood from its parking lot to offer help or otherwise to advocate for life, using the unaided human voice, without violating the noise ordinance.

## C.    Demonstration Events Staged Approximately Four Times A Year

It is Plaintiffs' intention to stage events larger than the monthly demonstrations approximately four times a year. These events would be advertised to attract as many participants as possible. The following guidelines would apply to these advertised protest events:

1.    Plaintiffs will notify the City as to the dates of the advertised events. The notification would indicate the types of activities that Plaintiffs' intend to stage, an estimate of the number of individuals expected to participate in the advertised events and the time when the advertised events will begin and end.

2.    The advertised events will be generally staged on the sidewalks, parkways and bikepaths on both sides of East New York Street between Asbury Drive and Frontenac Street; both sides of Eola Street between Liberty Street and McCoy Drive; and the west side of Oakhurst Drive between East New York Street and the southeast corner of the property where the Planned Parenthood facility is located.

3.    Protesters will be allowed to carry signs while engaged in demonstration activities. Stationary signs will be permitted in the parkway on the west side of Oakhurst Drive in an area running from the intersection of East New York Street and Oakhurst Drive to the southeast corner of the Planned Parenthood property and on New York Street and on Eola Road on either side of the street. The parties understand that these signs may be displayed for the duration of the scheduled demonstration event. The parties agree that for all stationary signs having a display space of 432 square inches or more there shall be no more than one such sign per ten lineal feet of parkway. For stationary signs with less than 432 square inches of display space, Plaintiffs will limit themselves to a reasonable number of such stationary signs in the parkway. Any signs placed in the parkway area running along the west side of

Oakhurst Drive that remain on display two (2) hours after all sidewalk counseling, prayer vigil and protest participants have left the scene may be confiscated by City of Aurora personnel.

4.     If quarterly protest activities include a presentation of "graphic signs" in the East New York Street demonstration area, Fox Valley Families Against Planned Parenthood representatives will display large and appropriate warning signs so that parents may either avoid the area or prepare their children for viewing the signs.

Fox Valley Families Against Planned Parenthood agree to post warning signs related to "graphic signs" and have done so in the past.    If Fox Valley Families Against Planned Parenthood reasonably cannot post warning signs, there will not be a breach of the Agreement and the City of Aurora may post warning signs.

5.     The parties recognize that the numbers of participants in the advertised events may be great enough so that all demonstrators may not be able to stand safely on the sidewalk and parkway on the west side of Oakhurst Drive running from the intersection of East New York Street and Oakhurst Drive to the southeast corner of the property on which the Planned Parenthood facility is located.    When, in the interests of public and personal safety, participants need to stand on the east sidewalk of Oakhurst Drive during an advertised event, the following guidelines shall be apply:

a.     the determination that personal and public safety considerations require that some demonstrators be allowed to stand on the east sidewalk of Oakhurst Drive during an advertised event shall be made by representatives of the City of Aurora and the demonstrators in consultation with the Aurora Police Department;

b.     demonstrators standing on the east side of Oakhurst Drive shall not block points of ingress and egress into and out of the residential area adjacent to the east side of Oakhurst Drive; and

c.     no signs shall be posted in the parkway on the east side of Oakhurst Drive by demonstrators using the sidewalk during an advertised event.

6.     Any complaints regarding eavesdropping shall be referred to the DuPage County State's Attorney's office.    Aurora Police Department officers may collect evidence and submit reports as necessary as part of the referral process.

11

**D.** **Regulation Of The Private Drive Area Adjacent To The Planned Parenthood Facility**

Running east to west through the shopping center is a private road that provides ingress and egress to the shopping center. The road is adjacent to the northern boundary of the property on which the Planned Parenthood facility is located. This road is not a public street although it is routinely used by members of the public for non-commercial purposes and having access from one public thoroughfare (Oakhurst) to another (Eola Road); however, this road is a private drive subject to a cross access easement agreement.

Plaintiffs acknowledge that disputes concerning use of the private access road by anti-Planned Parenthood protesters and sidewalk counselors should be addressed to the private property owners who control the thoroughfare and not the City. However, the City agrees to take the steps necessary to ensure that a public sidewalk be constructed along the length of the northern edge of the access road and extending from Oakhurst Drive to the northwest corner of the Planned Parenthood property, including conditioning plan approvals, plat approvals, and construction permit approvals on the construction of said public sidewalk, so as to assure public safety. The parties agree that the following principles shall apply to their interactions with one another regarding the private access road:

1. The parties recognize that the access road is a private easement and that the City of Aurora lacks authority to control access to this private property.

2. The City agrees that it will not arrest anti-Planned Parenthood protesters or anti-abortion counselors or prayer vigil participants for trespassing on the Planned Parenthood side of the access road – an area running from the west side of Oakhurst Drive to the northwest corner of the property owned by Planned Parenthood –

absent direction from proper authority (over the private property of the common areas).

3.     On occasions where viable trespass or other complaints are raised against said protesters, counselors or prayer vigil participants in and about the subject property, the procedures set forth in Section V will be followed. The parties understand and agree that nothing in this Agreement shall proscribe a police officer from the reasonable exercise of discretion in conformity with law.

4.     In hopes of avoiding arrests and misunderstandings generally, whenever a protester, counselor or prayer vigil participant requests the legal ground for a particular order or request made by a representative of the City, to the extent possible, that representative will provide without delay such legal ground for his or her order or request, whether that ground be a specific ordinance or statute or a specific provision of this Agreement.

5.     To avoid and/or minimize further disputes over whether crimes are committed by any person, the City will install at the location of the Planned Parenthood facility a high-resolution video camera recording on a continuous basis all activities and interactions that occur outdoors on or about the subject premises if any such cameras are installed for law enforcement purposes at other locations in Aurora, assuming that facial characteristics are blurred or otherwise never disclosed to persons other than official law enforcement personnel, unless and only to the extent necessary for use in criminal or other judicial or administrative proceedings, so as to assure that privacy rights are fully observed and protected and also to protect all other rights of the parties involved.

## V.    PROCEDURES FOR HANDLING LOCAL ORDINANCE PROVISION VIOLATIONS

The following procedures shall be followed on the occasions in which viable complaints of local ordinance violations are raised against anti-Planned Protesters, anti-abortion counselors or prayer vigil participants:

A.     If the individual against whom a complaint is raised has no serious criminal history, then the complaint will be treated as a local ordinance violation.

B.    A complaint shall be subject to the grievance procedures set forth in Section III of this Agreement and no citation will be issued pending the outcome of the grievance process.

C.    The liaisons and party representatives shall convene a meeting within seven days of the alleged ordinance violation in order to attempt to resolve the matters that resulted in the issuance of a complaint.

D.    In the event that the individual against whom a complaint has been made decides not to subject the matter to the grievance process, then a citation can be issued to the individual.

E.    If the incident that resulted in a complaint cannot be resolved through the grievance process, a citation can be issued against the individual against whom the complaint is directed; however, the individual shall not be subjected to handcuffing and police department arrest processing. The parties understand and agree that nothing in this Agreement shall proscribe a police officer from the reasonable exercise of discretion in accordance with law. Plaintiffs reserve the right to pursue any and all appropriate legal remedies in the event that they believe, in good faith, that Aurora is engaging in abusive, baseless, discriminatory or otherwise objectionable misuse of its arrest and prosecutorial powers.

F.    Anti-Planned Parenthood protesters, anti-abortion counselors or prayer vigil participants who satisfy (A) of this section and who have been cited for a local ordinance violation will be subject to adjudication in the local forum the City uses for such matters and the City reasonably will entertain requests for recommendations of court supervision as sentence to be passed by the adjudicative authority.

In addition, the City agrees to dismiss all charges with prejudice in the matter of

*City of Aurora v. Randall Means*, Kane Co. Circuit Court, No. 09-5690.

## VI.   <u>DEMONSTRATION ACTIVITIES IN RESIDENTIAL AREAS</u>

In *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495 (1988), the United States Supreme Court addressed the issue of residential picketing and First Amendment free speech rights. The Court found that residential streets are traditional public fora where citizens' free speech enjoys the greatest degree of protection. The Court concluded that municipalities could regulate "targeted" picketing of an individual residence, but an

14

ordinance that banned picketing wholesale from residential streets would violate the First Amendment. In its decision, the *Frisby* court recognized that the governmental interest in protecting the well-being, tranquility and privacy of the home "is certainly of the highest order in a free and civilized society," and it further recognized that, from time immemorial, streets, sidewalks and public ways in municipalities have been viewed as traditional public fora for the full and robust exercise of fundamental freedom of speech, assembly and free expression. 487 U.S. at 484 (quoting *inter alia*, *Hague v. CIO*, 307 U.S. 496 (1939) and *Carey v. Brown*, 447 U.S. 455, 471 (1980)). The Court indicated that the First Amendment permits government to prohibit offensive speech as overly intrusive of citizens privacy when a "captive audience" is targeted that cannot avoid the objectionable speech, 487 U.S. at 487, which must be balanced against this nation's profound commitment to the principle that debate on public issues must be robust, uninhibited and wide-open, even if sometimes unpleasantly sharp, etc. *New York Times v. Sullivan*, 376 U.S. 254 (1964).

The parties recognize the importance of balancing the *Frisby* court's holding that residential picketing other than targeted protest activities cannot be banned without violating the First Amendment with the same court's indication that municipalities like the City of Aurora have an interest in and a responsibility for protecting the tranquility and privacy of its citizens' residences. In order to achieve a reasonable balance of these interests, the parties adopt the following principles with regard to residential picketing:

    A.    The parties agree that protests by individuals opposed to the Planned Parenthood facility in Aurora can take place in any residential area of the City;

    B.    In order to protect citizens' rights to enjoy privacy and tranquility in the privacy of their residences, plaintiffs agree to organize, promote or

sponsor no more than four (4) protest events staged in any residential area during a twelve (12) month period;

C.     Plaintiffs will not organize, promote or sponsor any residential protest event that will last for more than three (3) hours in order to protect citizens' right to the quiet enjoyment of their property that includes the right to unimpeded ingress and egress;

D.     Organizers or promoters of a residential protest event shall provide the City and the Aurora Police Department with at least seven (7) days notice of their intention to stage a residential protest event so that necessary preparations can be made to protect public safety; and

E.     Organizers of a residential protest event shall post notices in the affected neighborhood of the expected time and location of the demonstration activities so that residents can plan accordingly.

## VII.   LABOR DISPUTE ACT AND VIEWPOINT DISCRIMINATION

The parties hereto recognize that to the extent that Aurora complies with the provisions of the Illinois Labor Dispute Act, 820 ILCS 5/1, *et seq.*, providing for protections for the right of citizens to mount protests with respect to labor disputes, it is plaintiffs' contention that no less protection may be extended to anti-abortion and pro-life protesters without said differential treatment constituting viewpoint discrimination in violation of the First Amendment. *Police Dep. of Chicago v. Mosley,* 408 U.S. 92 (1972); *Carey v. Brown*, 447 U.S. 455 (1980); *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995). The parties will mutually strive to avoid any issue arising in this respect, but plaintiffs necessarily reserve the right to pursue judicial remedies for viewpoint discrimination if such issue cannot otherwise be resolved.

16

## VIII.  EFFECTIVE DATE OF AGREEMENT

This Agreement shall become effective upon ratification by the City of Aurora Council on February 8, 2010.

IN WITNESS WHEREOF, the parties have executed this Agreement by affixing their signatures and the date of execution where indicated below.

FOX VALLEY FAMILIES AGAINST
PLANNED PARENTHOOD

_Eric J. Scheidler_

Dated: __2/2/10__

CITY OF AURORA

_Wayne Wingart_

Dated: __3-5-10__

17