IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TROY BUCCINI and MICHAEL STARY, | |
| Plaintiffs, | No. 21-cv-03031 |
| v. | Judge John F. Kness |
| MICHAEL CARRASCO *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Troy Buccini and Michael Stary, who were arrested for trespassing while sidewalk counseling and protesting outside a Planned Parenthood facility in Aurora, Illinois, filed an Amended Complaint ("Complaint") alleging claims under 42 U.S.C. § 1983, state law, and *Monell* liability, as well as requesting declaratory judgment against individual Defendant Officers and the City of Aurora.

Defendants have moved to dismiss the Complaint. Defendants argue that Plaintiffs' federal Constitution claims should be dismissed as untimely, and that the Court should decline supplemental jurisdiction over the state law claims.

For the reasons that follow, the Court holds that Count I, Count II, and the false arrest and unlawful detention claims in Count III must be dismissed as untimely. Conversely, the malicious prosecution claims in Counts III and IV are timely. Because Plaintiffs state a timely federal claim, the Court will exercise

supplemental jurisdiction over Plaintiffs' remaining state-law claims. Accordingly, and for the reasons below, Defendants' motion to dismiss (Dkt. 16) is granted in part and denied in part.

I.  **BACKGROUND**

On September 26, 2015, Plaintiffs Troy Buccini and Michael Stary gathered on a street in front of a Planned Parenthood abortion clinic in Aurora, Illinois. (Dkt. 6 ¶ 8.) Plaintiffs sought to counsel prospective abortion patients, hand out Christian pro-life literature, and engage in conversations with willing persons entering the clinic about the "scientific, physical, and emotional dangers and evil of abortion, as well as the Biblical basis for such moral beliefs against abortion." (*Id.* ¶¶ 1, 8.) Shortly after Plaintiffs began counseling, Aurora Police Officers Michael Carrasco, Reynaldo Rivera, and Sgt. Boatman arrived on the scene and issued "directives" to Plaintiffs to move their counseling activities to the sidewalk because the street in front of the clinic was private property.[1] (*Id.* ¶ 17.) When, after repeated requests from the officers, Plaintiffs refused to relocate, the officers arrested Plaintiffs for trespassing and transported them to jail. (*Id.* ¶¶ 9, 17.) Plaintiffs bonded out of jail later that same day.[2] (Dkts. 16-1–16-2.) Plaintiffs were prosecuted for criminal trespass in the

---

[1] Throughout the Complaint, Plaintiffs refer to "directives" given by Officers Carrasco, Rivera, and Boatman. (Dkt. 6 ¶¶ 23–35, 38–41, 43.) Plaintiffs, however, do not define "directive" in the Complaint. In responding to Defendants' motion to dismiss, Plaintiffs clarify that the "directives" are the arresting officers' requests that Plaintiffs cease counseling on the street and move their activities to the sidewalk. (Dkt. 21 at 4–5 ("[T]he order to refrain from protesting and sidewalk counseling against abortion on the public easement in front of the Planned Parenthood abortion facility . . . was called a 'directive' in the Amended Complaint.").)

[2] Plaintiffs made video recordings of their encounter with Officers Carrasco, Rivera, and Boatman and included YouTube links to the recordings within their Complaint. (Dkt. 6 ¶ 17.)

Circuit Court for the Sixteenth Judicial Circuit of Kane County, Illinois. (Dkt. 13 ¶ 47; Dkts. 16-1–16-2.) After a full trial on the merits, the charges were dismissed, and, after the government appealed, the Illinois Appellate Court, Second District upheld the dismissal of charges on September 24, 2020. (Dkt. 13 ¶ 48.)

On August 7, 2021, Plaintiff Buccini was again counseling prospective abortion patients outside the same Planned Parenthood clinic in Aurora. (*Id.* ¶ 19.) Plaintiff Buccini alleges that, as he was counseling, Aurora Police Officer William Whitfield assaulted him three times; attempted to intimidate him; chased him across the road while he was retrieving his car parked in front of a different business; and accused him of trying to break into Officer Whitfield's police car. (*Id.*) Plaintiff Buccini alleges that he complained to several other officers on site, but they refused to act against Officer Whitfield. (*Id.*)

On June 6, 2021, Plaintiffs filed suit against the City of Aurora and Aurora Police Officers Carrasco, Rivera, Boatman, and Whitfield (collectively, "Defendants"). (Dkt. 1.) Plaintiffs' Complaint asserts, under 42 U.S.C. § 1983, First and Fourteenth Amendments claims relating to the "directives" issued to Plaintiffs on September 26, 2015, to refrain from pro-life counseling on Planned Parenthood property (Counts I

---

The Court considers these video exhibits when ruling on Defendants' motion to dismiss because, at this stage, it "reviews the complaint and all exhibits attached to the complaint," including "video recordings." *Flores Delgado v. City of Chicago*, 547 F. Supp. 3d 824, 830 (N.D. Ill. 2021) (cleaned up). Defendants also attach to their motion to dismiss the Aurora Police Incident Reports, Booking Forms, and Criminal Complaints related to Plaintiffs' arrests. Because Plaintiffs refer to their arrests and subsequent criminal prosecutions in the Complaint, and these matters are central to their claims, these exhibits will also be considered when ruling on the motion to dismiss. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

and II), and a Fourth Amendment claim for false arrest, unlawful detention, and malicious prosecution relating to Plaintiffs' September 26, 2015, arrest and subsequent prosecution (Count III). Plaintiffs also bring state law claims for malicious prosecution (Count IV) and breach of the Settlement Agreement ("SA") entered into by the City of Aurora and pro-life protestors (Count V). (Dkt. 6 ¶¶ 20–63.) Plaintiff Buccini also asserts a state law assault claim against Officer Whitfield (Count VI). (*Id.* ¶¶ 64–65.) Finally, Plaintiffs asserts against the City of Aurora a claim for indemnification under state law, a *Monell* claim, and a request for declaratory judgment (Counts VII–IX). (*Id.* ¶¶ 66–75.)

Defendants now move to dismiss the Amended Complaint. (Dkt. 16.) According to Defendants, Plaintiffs' federal constitutional claims are untimely under the applicable statute of limitations, and the Court should decline to exercise supplemental jurisdiction over the remaining state-law claims. (*Id.* at 1.) For the reasons stated below, the Court grants in part and denies in part Defendants' motion to dismiss.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a

4

right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

Reliance on a statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). Plaintiffs "need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). But a plaintiff can plead himself or herself out of court on a statute of limitation basis if the face of the complaint reveals that the claim is time-barred. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010). As a result, any "motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) (cleaned up). If there is any set of facts, consistent with the complaint, "that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

5

## III. DISCUSSION

Defendants contend that Plaintiffs' federal claims are time-barred and must be dismissed. (Dkt. 16 at 1.) Plaintiffs counter that all their federal claims are timely. (Dkt. 21 at 3–7.) These contentions are addressed in turn.

### A. Timeliness of Plaintiffs' Section 1983 Claims

Section 1983 claims "are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). In Illinois, where the events underlying this lawsuit occurred, the "statute of limitations for personal-injury actions is two years from when the cause of action accrued." *Id.* (citing 735 ILCS 5/13-202). Although state law determines the applicable statute of limitations, the "accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)). Courts must use a two-step process to determine the accrual date: "(1) we identify the injury and (2) we determine when the plaintiff could have sued for that injury." *Id.*

i. First and Fourteenth Amendment Claims

In Counts I and II, Plaintiffs allege that the directive issued by Officers Carrasco, Rivera, and Boatman not to protest or sidewalk counsel on the street outside the Planned Parenthood clinic violates their First Amendment rights to

freedom of religion, speech, and press, and their Fourteenth Amendment due process rights. (Dkt. 6 ¶¶ 20–43.) The Officers issued the directive on September 26, 2015, (*see* Dkt. 17 at 4), and Plaintiffs filed suit on June 6, 2021 (Dkt. 1).

The statute of limitations on a section 1983 claim in Illinois is two years. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019). Unless an exception applies, therefore, Plaintiffs' claims are untimely. *See Kelly v. City of Chi.*, 4 F.3d 509, 512 (7th Cir. 1993) (noting that "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act became painful" (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981))).

Plaintiffs do not dispute that their claims were not filed within the applicable two-year statute of limitations period. (Dkt. 21 at 3–5.) Plaintiffs argue, however, that the claims are timely because Defendants have committed continuing violations because, despite having the power to rescind the directive, they avoided doing so each day. (Dkt. 21 at 4–5.) Defendants dispute that the continuing violation rule applies here. (Dkt. 22 at 2–4.)

Statutes of limitations ordinarily begin to run when a plaintiff first has knowledge or constructive knowledge of the events giving rise to his claim. *See Prime Eagle Grp. v. Steel Dynamics*, 614 F.3d 375, 377 (7th Cir. 2010). But the "continuing violation doctrine" posits that, when a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the wrong ceases. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); *see also Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 729 (N.D. Ill. 2020). The

purpose of the continuing violation doctrine is " 'to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought.' " *Id.* at 730 (quoting *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008)).

This doctrine does not apply, however, where a complaint alleges "discrete and independently actionable violations." *Kovacs v. United States*, 614 F.3d 666, 675 (7th Cir. 2010); *see also Turley v. Rednour*, 729 F.3d 645, 653 (7th Cir. 2013). A continuing violation exists where there is a "practice that brings with it a fresh violation each day." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *Woody v. City of Granite City*, 2019 WL 1326884, at *4 (S.D. Ill. Mar. 25, 2019) (continuing violations are those in which "the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run"); *see also Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1991) (continuing violation doctrine is limited and "does not apply where the alleged tortious acts . . . caused direct damages that occurred at a certain point in time—resulting in immediate and direct injury . . . with consequential effects").

In contrast, continuing *injuries*, as opposed to continuing *violations*, are those in which a "discrete wrongful act causes continuing harm." *Turley*, 729 F.3d at 654. Continuing injuries do not extend the statute of limitations. *Rednour*, 729 F.3d at 653; *see also Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 594 (7th Cir. 2001). Once the harmed party is on notice, the claim accrues, and that the injury continues to

8

exist does not extend the deadline to file a complaint.³ *Turley*, 729 F.3d at 654.

Plaintiffs argue that their First and Fourteenth Amendment claims are timely because it was Defendants' retaliatory acts—ending only when the Appellate Court affirmed the dismissal of charges against Plaintiffs in 2020—that started the clock. (Dkt. 21 at 3–4.) Plaintiffs contend that their 2021 suit was therefore brought within the two-year statute of limitations. (*Id.* at 3–4.) The Court disagrees.

As is particularly relevant here, courts have rejected the notion that an arrest could set into motion events creating an ongoing violation that alters the date of accrual for a First or Fourteenth Amendment claim. Plaintiffs' allegations here are analogous with *Pitts*, where the plaintiffs argued that the defendants violated the plaintiffs' First Amendment rights by placing "slum" property signs on plaintiffs' yards. 267 F.3d at 594. Plaintiffs filed suit after the applicable statute of limitations period passed but argued their claim constituted a continuing violation of plaintiffs' First Amendment rights which did not terminate until the last day the signs were posted. *Id.* As the Seventh Circuit explained, however, there was no continuing violation because defendants took "only one" action. *Id.* at 592, 596. *Pitts* emphasized that, at the moment the signs were posted, the plaintiffs "knew they had suffered an injury; and nothing new happened thereafter to change the nature of the injury." *Id.* at 596. In contrast, here, the only alleged violations occurred in 2015, when

---

³ "The doctrine of continuing violation, as the Illinois Supreme Court has held, 'does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a continuous whole for prescriptive purposes.'" *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); *see also Taylor v. Board of Ed. of City of Chicago*, 10 N.E.3d 383, 396 (Ill. App. Ct. 2014).

Defendants issued the directives and arrested Plaintiffs. The resulting *effects* of these actions do not constitute continuing violations since Plaintiffs "knew or should have known" they suffered an injury in 2015, six years before Plaintiffs filed their complaint. *See Pitts*, 267 F.3d at 596; *see also Wallace*, 549 U.S. at 391. Accordingly, Plaintiffs' First and Fourteenth Amendment claims (Counts I and II) are untimely and must be dismissed with prejudice.

        ii.       First Amendment Retaliation

Plaintiffs also contend their First Amendment claims are timely because they include First Amendment retaliation claims that ripened only when the Appellate Court dismissed Plaintiffs' charges on September 24, 2020. (Dkt. 21 at 5–6 ("Defendants retaliated against Plaintiffs . . . by violating the [Settlement Agreement] and prosecuting them and even appealing the dismissal of their attempts to relentlessly prosecute them.").) But the Seventh Circuit has held that "[g]enerally, the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the retaliatory act occurred." *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). Plaintiffs have not persuaded the Court why this case should not be governed by *Gekas*.

These allegations are similar to *Gekas*, where the plaintiff, a dentist, alleged that several employees of the Illinois Department of Financial and Professional Regulation violated his First Amendment rights to free speech and retaliated against him by issuing a cease-and-desist letter ordering the plaintiff immediately to stop treating and proscribing controlled substances without the appropriate physician's license. *Id.* at 892. But the Seventh Circuit found that the plaintiff's First

10

Amendment retaliation claims accrued immediately after the retaliatory act issuing the cease-and-desist letter occurred. *Id.* at 894.[4] Plaintiffs here allege that Defendants' retaliatory acts occurred over several years and took form in the violation of the SA and prosecution of Plaintiffs. (Dkt. 21 at 6.) But the violation of the SA and the initiation of prosecution against Plaintiffs took place at the time of Plaintiffs' arrest in 2015. It was then when Plaintiffs "knew or should have known" that Defendants violated their First Amendment rights. *Gekas*, 814 F.3d at 894. The Court therefore finds that Plaintiffs First Amendment Retaliation claim (Count I) is untimely and must be dismissed with prejudice.

### B. Timeliness of Fourth Amendment Claims

In Counts III and IV, Plaintiffs allege Fourth Amendment false arrest, unlawful detention, and malicious prosecution claims. (Dkt. 6 ¶¶ 44–56.) Defendants contend that a claim for unlawful seizure and detention accrues when a plaintiff is released from custody, rendering Plaintiffs' false arrest and unlawful detention claims untimely. (Dkt. 22 at 1 (citing *Smith v. City of Chicago*, 3 F.4th 332, 339 (7th Cir. 2021), *cert. granted, judgment vacated sub nom.*, 142 S. Ct. 1665 (2022)).) Plaintiffs do not dispute this. Defendants also argue that Plaintiffs' malicious prosecution claim is actionable only under state law. (Dkt. 17 at 2.) Plaintiffs contend that the malicious prosecution claim contains adequate federal constitutional grounds such that the Court should retain jurisdiction over the state law claims. (Dkt. 21 at 7.)

---

[4] In fact, the court in *Gekas* dismissed plaintiff's argument "that any retaliatory court action does not accrue until the proceedings conclude in favor of the plaintiff." *Id.* at 894–95.

11

      i.      False Arrest

Plaintiffs allege that all Defendants except Officer Whitfield illegally seized Plaintiffs and detained them in jail without probable cause, violating Plaintiffs' Fourth Amendment rights. (Dkt. 6 ¶¶ 44–49.) Defendants argue this claim is barred by the applicable statute of limitations because Plaintiffs' detention ended more than two years before Plaintiffs filed their claim. (Dkt. 17 at 3–5.)

It is well-settled that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397; *see also Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018) ("Because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of detention.").

Under this rule, then, the statute of limitations for Plaintiffs' Section 1983 false arrest claim accrued on the date of their arrest because they were released on bond the same day. (Dkts. 16-1–16-2.) Plaintiffs were arrested and released on bond on September 26, 2015. (Dkts. 16-1–16-2.) Plaintiffs' claims for false arrest thus accrued, at the latest, on September 26, 2015. (Dkts. 16-1–16-2.)[5] Because Plaintiffs filed their Complaint against Defendants more than two years after their arrest and

---

[5] This Court may take notice of these documents without converting Defendant's motion to dismiss to a motion for summary judgment because the documents are matters of public record. *Tucker v. City of Chicago*, 907 F.3d 487, 489 n.1 (7th Cir. 2018) ("[I]t is well established that district courts may take judicial notice of certain documents—including records of administrative actions—when deciding motions to dismiss.").

release, their Section 1983 false arrest claim is barred by the statute of limitations and is dismissed with prejudice. *See Wallace*, 549 U.S. at 387; *Manuel*, 903 F.3d at 670.

      ii.      Unlawful Detention

Plaintiffs also allege that all Defendants except Officer Whitfield illegally detained Plaintiffs in jail without probable cause, violating Plaintiffs' Fourth Amendment rights. (Dkt. 6 ¶¶ 44–49.) Defendants argue this claim is barred by the applicable statute of limitations because Plaintiffs' detention ended more than two years before Plaintiffs filed their claim. (Dkt. 17 at 3–5.)

A Fourth Amendment claim of unlawful detention accrues when the detention ceases. *See, e.g.*, *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019); *Flynn v. Donnelly*, 793 F. App'x 431, 434 (7th Cir. 2019); *Manuel*, 903 F.3d at 669. The statute of limitations for Plaintiffs' Section 1983 unlawful detention claim thus accrued on the date of their release; September 26, 2015. (Dkt. 17 at 4.) When Plaintiffs were released on bond, their detention ceased; that action stopped the constitutional injury. *Manuel*, 903 F.3d at 669. Plaintiffs' claims for unlawful pretrial detention thus began to accrue, at the latest, on September 26, 2015. (Dkt. 17 at 4.) Because Plaintiffs filed their Complaint against Defendants more than two years after their release from custody, their Section 1983 unlawful detention claim is barred by the statute of limitations and is dismissed with prejudice. *See Manuel*, 903 F.3d at 669.

13

iii. Malicious Prosecution

Plaintiffs further allege that Defendants maliciously prosecuted Plaintiffs, as evidenced by "their willful disregard of the [Settlement Agreement] and relentless pursuit of said proceedings against Plaintiffs over the course of five (5) years;" Plaintiffs allege that these actions violated their Fourth Amendment rights. (Dkt. 6 ¶¶ 44–49.) Defendants contend that malicious prosecution is actionable only under Illinois state law and, as such, should be dismissed because all the other federal claims are untimely. (Dkt. 17 at 2.)

Until recently, the Seventh Circuit consistently held that claims for malicious prosecution exist only under state law, not the federal constitution. *See, e.g.*, *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019); *Manuel*, 903 F.3d at 670; *Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019); *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013); *Savory v. Cannon*, 532 F. Supp. 3d 628, 637 (N.D. Ill. 2021). But the Supreme Court recently explicitly recognized their existence in a decision regarding when Fourth Amendment claims for malicious prosecution are satisfied. *See Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022) (Fourth Amendment claim under § 1983 for malicious prosecution "requires the plaintiff to show a favorable termination of the underlying criminal case against him"); *see also Smith v. City of Chicago*, 2022 WL 2752603, at *1 (7th Cir. July 14, 2022) ("After *Thompson*, a Fourth Amendment claim for malicious prosecution accrues when the underlying criminal prosecution is terminated without a conviction."); *Navarro v. City of Aurora*, 2022 WL 1988990, at *2 (N.D. Ill. June 6, 2022) (*Thompson* overruled Seventh Circuit

14

precedent that individuals do not have a federal right not to be summoned into court and prosecuted without probable cause under the Fourth Amendment); *In re Watts*, 2022 WL 9468206, at *15 (N.D. Ill. Oct. 14, 2022) ("*Thompson* overruled Seventh Circuit precedent that there was no cognizable claim for malicious prosecution under the Fourth Amendment.")

Following *Thompson*, the Seventh Circuit found in *Smith* that a Fourth Amendment malicious prosecution claim accrues when the underlying prosecution is terminated. 2022 WL 2752603, at *1. Given the changes in the governing law, Plaintiffs' claim for malicious prosecution grounded in the Fourth Amendment is a viable federal claim, and it is not barred by the applicable statute of limitations as fewer than two years passed between the *end* of Plaintiffs' prosecution and the *filing* of the Complaint. As a result, the motion to dismiss Plaintiffs' Fourth Amendment malicious prosecution claim is denied.

### C. State Law Claims

Defendants contend that Plaintiffs' remaining claims are cognizable only under Illinois law and do not raise federal constitutional questions. (Dkt. 17 at 6–8.) Because these allegations are state law claims without federal constitutional questions, Defendants argue that, should the Court dismiss all the federal constitutional claims, the Court should deny exercising supplemental jurisdiction over these claims. (Dkt. 22 at 6–8); *see also* 28 U.S.C. § 1367(c)(3). Because Plaintiffs have stated a timely federal claim, the Court will not relinquish its supplemental jurisdiction at this time.

15

### D. *Monell* Claim and Declaratory Judgment

Finally, in Count VIII Plaintiffs assert a *Monell* claim, alleging all Section 1983 claims "were committed under color of law and pursuant to a policy and custom." (Dkt. 6 ¶ 70.) Defendants, relying on their argument that all federal constitutional claims are barred by the applicable statute of limitations, argue Plaintiffs' *Monell* claim should also fail. (Dkt. 17 at 6–7.) A plaintiff typically cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."). Because Plaintiffs sufficiently allege an underlying constitutional violation, their *Monell* claim survives at this time. *Monell* liability may, however, be predicated only on the malicious prosecution claim. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Mathews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (no *Monell* liability under Section 1983 without an underlying constitutional violation).

Plaintiffs' final claim requests that the Court issue a declaratory judgment under 28 U.S.C. § 2201 and hold that Defendants' application of the SA is not only in breach of the SA but also unconstitutional under the First, Fourth, and Fourteenth Amendments. (Dkt. 6 ¶¶ 72–75.) In response, Defendants contend that Plaintiffs' declaratory judgment claim should be dismissed as barred under the statute of limitations because "every federal appellate court to address the issue has held that

a claim for declaratory judgment remains barred to the same extent that a time bar applies to the underlying claim for substantive relief." (Dkt. 17 at 4–5 (citing *Greenhill v. Vartanian*, 2017 WL 5294039, at *6 (N.D. Ill. Nov. 17, 2017)).) Defendants are correct that Plaintiffs' claim for a declaratory judgment is not a cognizable independent cause of action. *See, e.g.*, *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 774 (N.D. Ill. 2021); *Mohammad v. IndyMac Bank, F.S.B./One West Bank, F.S.B.*, 2018 WL 1252112, at *6 (N.D. Ill. Mar. 12, 2018); *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016). Defendants are also correct that the statute of limitations for a declaratory judgment claim relies on the underlying substantive claim. *See Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1013–14 (N.D. Ill. 2010); *Holmes v. City of Chicago*, 1995 WL 270231, at *5 n.10 (N.D. Ill. May 5, 1995). But because Plaintiffs allege a timely federal claim for malicious prosecution, their claim for a declaratory judgment is not untimely and survives at this time.

## IV.    CONCLUSION

Counts I and II are dismissed with prejudice as untimely. For Count III, Plaintiffs' Fourth Amendment claims for false arrest and unlawful detention are dismissed with prejudice as untimely. Plaintiffs' Fourth Amendment claims of malicious prosecution in Counts III and IV are timely. Plaintiffs' state-law claims in Counts V, VI, and VII remain viable under the Court's supplemental jurisdiction. Finally, Plaintiffs' *Monell* and declaratory judgment claims (Counts VIII and IX) survive at this time and are timely only to the extent of Plaintiffs' Fourth Amendment

17

malicious prosecution claims. Defendants' motion to dismiss (Dkt. 16) is, therefore, granted in part and denied in part.

SO ORDERED in 21-cv-03031.

Date: March 28, 2025

_____
JOHN F. KNESS
United States District Judge